GARY M. RESTAINO
United States Attorney
District of Arizona
GLENN B. McCORMICK
Assistant U.S. Attorney
Arizona State Bar No. 013328
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: glenn.mccormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR- 22-01197-PHX-JJT |
|---|---|
| Plaintiff, | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| vs. | |
| Wesley Warren Temple, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned attorneys, and requests the court to detain Mr. Temple pending trial as a flight risk and as a danger to the community. Mr. Temple has requested placement in Crossroads. The United States persists in requesting detention for the reasons set out below.

**Charged Offense**

Mr. Temple was indicted on August 30, 2022, for one count of Possession of a Firearm (19 Molotov Cocktail incendiary devices) Not Registered in the National Firearms and Transfer Record, Title 26, United States Code, Section 5861(d). [Doc 1.]

**Background and Evidence**

Law enforcement officers were investigating certain individuals who had entered upon Federal Bureau of Investigation (FBI) property on several occasions, where they placed stickers depicting symbolism associated with the boogaloo movement near secure entry points. The boogaloo is not a single cohesive group, but rather a loose concept arising

from internet platforms which has become a rallying point for some fringe politically motivated groups. The concept has resonated with such fringe groups to reference an impending politically-motivated civil war or uprising against the government following perceived incursions on Constitutional rights—including the Second Amendment—or other perceived government overreach.

On December 3, 2020, FBI Special Agents and Federal Protective Services Officers went to the residence of one of the individuals suspected of placing the stickers on FBI property, to serve him with violation notices relating to those acts. Upon making contact with the individual, Mr. Temple was found to be with him at his residence.  Mr. Temple admitted to agents that he was involved with placing the stickers on FBI property. He also admitted to being a prohibited possessor. [Disclosure p. 3.]

On December 4, 2020, while surveilling another of the persons associated with placing boogaloo stickers on FBI property, Mr. Temple was observed arriving at this person's residence and placing what appeared to be an AR-15 style firearm in the trunk of a car registered to the person being surveilled.  [Disclosure p. 4.] Mr. Temple and the vehicle owner entered the car and drove off. A traffic stop of the vehicle was conducted at approximately 70 S. 17th Avenue, Phoenix, Arizona, near the State Capital grounds, where an active protest was taking place. [Disclosure p. 4.] Both were initially non-compliant, identified themselves as sovereign citizens, and refused to get out of the vehicle. [Disclosure p. 4.] Eventually, Mr. Temple complied and was taken into custody without further incident. [Disclosure p. 4.] However, the other individual got out of the car, was seen to have a firearm holstered on his hip, then got back in the car. Negotiations failed to get the individual to submit to the stop, and Phoenix Police Special Assignment Unit officers were forced to go in tactically to arrest him. [Disclosure p. 4.] Both individuals were wearing Hawaiian shirts, which are an item of clothing persons who associate with the boogaloo movement wear to identify themselves as such. [Disclosure p. 4.]

Mr. Temple admitted to bringing the firearm and three magazines loaded with about 90 rounds of ammunition to the other persons residence, because they were going to go

shooting after the protest. [Disclosure p. 4.] Mr. Temple identified the firearm as a homemade "Ghost Gun," but would not say who made it. [Disclosure p. 5.] Ghost Guns are typically made from firearms parts purchased over the internet and assembled into a working firearm. Some have no serialized parts and are untraceable. The Ghost Gun was seized from the trunk of the stopped vehicle.

Mr. Temple told agents that he does not intend to comply with laws that prohibit him from owning or possessing a firearm. [Disclosure p.5.] When Mr. Temple was questioned about why he was non-compliant during the traffic stop, he replied, "Look, it's no secret, the cat's out of the bag, [about] what we believe in and who we are." Mr. Temple explained further that they didn't believe they should have to yield to officers for "no reason". Mr. Temple said just because he's a felon shouldn't mean he can't be around firearms. Mr. Temple said he's had firearms in his home, and he didn't understand how that wasn't allowed. [Disclosure 61.] Mr. Temple said he didn't plan on complying with any of the gun laws. Mr. Temple said he's tired of complying with laws that violate the Constitution and that he's tired of being pushed around, and then referred to being arrested as the same thing as being kidnapped. [Disclosure p. 62.]

Mr. Temple was convicted of Misconduct Involving Weapons, a class 4 felony in Maricopa County Superior court, on October 28, 2021, for possessing the firearm, and sentenced to 2.5 years in the Arizona Department of Corrections. Mr. Temple remained in custody from his arrest on December 4, 2020, until his release from AZDOC on August 11, 2022.

Mr. Temple's then-wife, RS[1], was interviewed by agents on December 29, 2020, related to the car Mr. Temple had driven to the fellow boogaloo's house, shortly before his December 4, 2020, arrest. [Disclosure p. 166-173.] The car belonged to RS. During that interview, RS told agents, among other things:

---

[1] A default decree was filed October 13, 2021, finalizing Mr. Temple's and RS's divorce.

1. Mr. Temple felt it was his right to have a firearm, that it was still his Constitutional right to have firearms even though he was a convicted felon.
2. When asked if Mr. Temple had ever talked about hurting anyone else and she said "I hate saying this. Um, he did mention at one point that Ghost Guns were built to kill politicians." When asked why she hated saying that and she said it was because she knew "snitches get stitches." RS was asked what she and Mr. Temple were talking about when he told her that Ghost Guns were made to kill politicians and she said he said he made the comment after she asked him why he built a gun.
3. Agents asked RS when Mr. Temple started wearing the Hawaiian shirts and she said sometime in April [2020] he went on a "meth bender", she sent him to the "funny farm", he came back suicidal, and then sometime around May he started getting involved more in the movement. RS said she believed Mr. Temple learned about it all on-line and from talking to people who were like minded. RS thought it was just his way of expressing his political views, but then she believed he started communicating with people on "me-we" which she believed to be a dark web site.

[Disclosure p. 171.]

On January 30, 2021, while preparing to move from a house Mr. Temple and RS had leased, RS discovered five cardboard four-bottle ginger beer packages with 19 Molotov Cocktails in them. RS found the Molotov Cocktails in a garage cabinet that she described as an area only used by Mr. Temple. [Disclosure p. 455.] Although their relationship was rocky, RS maintained contact with Mr. Temple while he was detained in the Maricopa County Jail, pending resolution of the state Misconduct Involving Weapons charge. Contact was via electronic communications: RS on her phone and Mr. Temple on a tablet provided by the jail. RS contacted Mr. Temple and had the following text conversation with him:

RS:   So found your Molotov cocktails. Not really sure how to dispose of those.

|   |   |   |
|---|---|---|
| 1 |  | Real fucking classy totally peaceful protest right? |
| 2 | Temple: | and here we go...I knew it wouldnt be long before you were mad at me |
| 3 |  | again.  sweet I would never use anything like that against humans... it was |
| 4 |  | gonna be some fun out in the desert after the fire restrictions were lifted. |
| 5 |  | not really a big deal. you can throw them away as is, not a big deal |
| 6 | RS: | Care to explain? |
| 7 | Temple: | yes, they have caps and are sealed. just leave them in the cardboard And |
| 8 |  | put them in the cans outside. they are stable because of the used motor oil |
| 9 |  | in them. the trash people will separate them |
| 10 | RS: | They won't blow up when they get dumped into the garbage truck? |
| 11 | Temple: | I just hurt my back...it felt like my spine smushed a disc. I saw a flash it |
| 12 |  | hurt so bad...I don't know what to do |
| 13 | Temple: | they are stable...the motor oil in them makes them stable. no they |
| 14 |  | won't blow up lol. |

[Disclosure p. 455.]

Through her interactions with FBI agents after Mr. Temple's December 4, 2020, arrest, RS had contact information for agents associated with the investigation. Out of safety concerns, and not wanting any involvement with the Molotov Cocktails, RS contacted FBI agents associated with the investigation and asked them to come retrieve the Molotov Cocktails. [Disclosure p. 456.] On January 31, 2021, while conducting a consent search and retrieving the Molotov Cocktails, RS showed agents the above text conversation with Mr. Temple.[2] [Disclosure p. 455.]

The FBI laboratory later identified the items as incendiary devices consisting of glass ginger beer bottles containing a gelatinous polystyrene substance, gasoline, and motor

---

[2] Agents also obtained Mr. Temple's text communications from the Maricopa County Sheriff's office by subpoena.  The Maricopa County Sheriff's Office provides inmates notice that communications over the jail provided tablet are subject to monitoring. [Disclosure pp. 2138-51.]

1    oil, with original bottle caps secured on each of them. [Disclosure pp. 2093-2128.] Cloth
2    wicks were located next to each bottle. The bottles were also examined for fingerprints and
3    DNA.  Mr. Temple's fingerprints were found on one of the bottles. [Disclosure pp. 2082-
4    89.] Mr. Temple's DNA was found on several of the bottles. It should also be noted that
5    DNA from an unidentified female was also located on some of the bottles. [Disclosure pp.
6    2075-81.]

7         On September 1, 2022, a post arrest interview, Mr. Temple indicated that he knew
8    that items were seized from his home on January 31, 2021, but did not like the agent's use
9    of the term "Molotov Cocktail." Mr. Temple claimed he only knew about plastic jugs
10   containing automotive fluids being in the garage and thought that was what RS was
11   referring to in their text exchange. Mr. Temple stated that he knew what a Molotov Cocktail
12   was because of the Internet. He described them as a bottle of flammable fluid that's broken
13   with the intent of firebombing something, and it's ignited by a flammable source such as a
14   match. Mr. Temple said that he was talking to RS about one-gallon jugs/water containers
15   filled with various automotive fluids, not Molotov Cocktails. Mr. Temple also stated that
16   he had no other way to dispose of jugs and their contents, so he figured "let's go blow some
17   shit up". Mr. Temple reiterated he did not "manufacture any firebombs." [Disclosure pp.
18   2197-2201.]

19   **Title 18 USC § 3142(g) factors**

20      **1.  Nature and circumstances of the charged offense:**

21   Possession of one, much less 19 Molotov Cocktails creates a dangerous situation. The
22   flammable contents in glass bottles create a fire hazard under the best conditions. Even if
23   Mr. Temple's claim that he was merely going to have some fun with them in the desert is
24   to be believed, he planned to play with fire out in nature which could lead to a catastrophic
25   fire.

26   Although Title 26 U.S.C. §5861(d) Possession of a Firearm Not Registered in the
27   National Firearms Registration and Transfer Act is not a crime of violence *per se*,  Molotov
28   Cocktails are destructive devices that can damage property and injure or kill people,

depending on how they are used. The timing of Mr. Temple's possession of the items, his interest in protests, his belief that he should be able to possess firearms despite his felony convictions, and his association with the boogaloo movement present a concerning set of circumstances. By his own words, Mr. Temple does not believe that settled law regarding the possession of firearms applies to him. This combination of factors establishes by clear and convincing evidence that Mr. Temple presents a danger to the community.

**2. Weight of the Evidence:**

The Molotov Cocktails were discovered by RS in garage cabinets when she was preparing to move from the home Mr. Temple and RS had leased. Mr. Temple was in Maricopa County Jail, pending resolution of the Misconduct Involving Weapons charge in Superior Court at the time. RS texted Mr. Temple about the Molotov Cocktails. Mr. Temple received the texts and responded on a jail-provided tablet. After that text conversation, RS contacted the FBI to report the Molotov Cocktails and have them safely removed from the residence. While FBI was removing the items, RS showed agents the text conversation on her phone. Agents independently obtained the communications from the Maricopa County Sheriff's Office via subpoena. Mr. Temple had notice that non-legal communications over the tablet were subject to jail monitoring and were not private.

Mr. Temple described the Molotov Cocktails well in the texts. His texts establish that he knew they consisted of capped ginger beer bottles of gasoline mixed with motor oil and placed in the typical four-pack cardboard beer bottle packaging. He commented that the Molotov Cocktails were sealed and stable because of the motor oil in the gasoline. RS had not provided any details about the items when she confronted Mr. Temple. The evidence of Mr. Temple's knowledge of the Molotov Cocktails is clear.

In addition to Mr. Temple's knowledge of the Molotov Cocktails, his DNA and fingerprints were found on the bottles by the FBI lab. The lab also identified the items as functional incendiary bombs/destructive devices.

Therefore, the weight of the evidence against Mr. Temple is overwhelming.

**3. History and Characteristics:**

a. **Character**

Mr. Temple associates with a movement that espouses concerning beliefs. His association with the movement is not limited to virtual internet comradery, Mr. Temple personally associates with persons in Arizona who share his beliefs and similarly engage in acts prohibited by law. While mere association and belief are protected under the First Amendment, Mr. Temple's illegal possession of Molotov Cocktails and firearms are illegal acts that appear to be associated with his beliefs. Further, troubling comments attributed to Mr. Temple by RS strongly suggest that Mr. Temple has dangerous thoughts. Those thoughts, coupled with his illegal possession of Molotov Cocktails and firearms establish clear and convincing evidence that Mr. Temple is a danger to the community.

b. **Mental condition**

Mr. Temple self-reported attending unspecified therapy in 2020, and a belief that he needs further assistance. RS also noted some sort of mental health intervention, though the timeframe is unclear, and it could be the same assistance Mr. Temple self-reported. Further, RS noted that at the time of his release from "the funny farm" Mr. Temple was suicidal. Mr. Temple's mental stability is questionable.

c. **Family ties**

Mr. Temple is divorced from RS. He self-reports one child in New Mexico with whom he has no contact, and another in Tennessee with whom he has regular contact. Mr. Temple self-reports that he does not have any contact with his father, who lives in NM, but regular contact with a brother in Nevada. It does not appear that Mr. Temple has any family ties in Arizona.

d. **Employment**

Mr. Temple has no recent employment due to his incarceration and prohibition by a subsequent residential halfway house facility where he was living post-incarceration and prearrest in the present case. Therefore, he would not be leaving gainful employment if he were to flee the jurisdiction.

e. **Financial Resources**

Mr. Temple reports some debt and no expenses, but no income because he Has either been incarcerated or in a halfway house since December 2020. Placement at Crossroads would not be impacted by Mr. Temple's current financial situation.

    f. **Length of residence**

Mr. Temple self-reports that he has been back and forth between Arizona and New Mexico throughout his life. However, his most recent residential ties have been in Arizona. There does not appear to be anything other than this case that is keeping Mr. Temple in Arizona.

    g. **Community ties**

Mr. Temple does not appear to have any community ties in Arizona, other than his associations with others who share his boogaloo related beliefs.

    h. **Past conduct**

Mr. Temple's past conduct is recounted throughout the various §3142 Factors herein. Mr. Temple presents as a drug abuser, who serially drives while under the influence, and who has beliefs and an infatuation with firearms that leads him to violate established law.  According to RS he is known to have created a Ghost Gun for an extremely troubling reason.  These factors establish both his danger to the community and his refusal to comply with the law.

    i. **Drug abuse**

Mr. Temple's criminal history and self-reported participation in rehabilitation programs in 2011, 2020, and while most recently incarcerated (2020-2022) establish a longstanding drug problem. Even assuming Mr. Temple has the best of intentions if released to Crossroads, the stresses currently in his life are likely to challenge his ability to remain sober and comply with conditions of release. Mr. Temple's history foretells likely failure if released.

    j. **Criminal History**  (from initial PTS Report)

        i. On May 17, 2004, Mr. Temple was convicted of two Misdemeanor Counts of Interfering with Judicial Proceedings in Albuquerque, NM.

  ii. On November 3, 2004, Mr. Temple was convicted of a Misdemeanor DUI Chino Valley, AZ

  iii. On November 2, 2004, Mr. Temple was convicted of Misdemeanor DUI Liquor/Drugs combo in Prescott, AZ

  iv. On April 13, 2005, Mr. Temple was convicted of Misdemeanor Theft in Prescott, AZ.

  v. On April 28, 2005, Mr. Temple was convicted of Felony Possession of Drug Paraphernalia, and Misdemeanor Driving without License due to DUI in Yavapai County, AZ.

  vi. On April 5, 2006, Mr. Temple was convicted of Misdemeanor Larceny in Taos, NM.

  vii. On January 25, 2008, Mr. Temple was convicted of Burglary and Trafficking in Drugs in what appears to be a deferred prosecution.

  viii. On March 3, 2008, Mr. Temple was convicted of Burglary and engaged in a 2nd chance drug court program in Taos, NM.

  ix. On May 18, 2010, Mr. Temple was convicted of a Misdemeanor Failure to Appear in Yavapai County, AZ.

  x. On May 17, 2010, Mr. Temple was convicted of a Misdemeanor Failure to Appear, Prescott Valley, AZ

  xi. On September 12, 2011, Mr. Temple was convicted of Felony Aggravated DUI in Prescott, AZ

  xii. On October 12, 2015, Mr. Temple was convicted of Misdemeanor Operation of a Vehicle without an Interlock Device in Flagstaff, AZ

  xiii. On February 12, 2016, Mr. Temple was convicted of Felony endangerment and Felony Aggravated DUI in Yavapai County, Arizona. These convictions resulted in sentences of 1 year and 2.5 years imprisonment respectively.

      xiv. On October 28, 2021, Mr. Temple was convicted of Felony Misconduct Involving Weapons and sentenced to a presumptive term of 2.5 years. *Mr. Temple was in pretrial custody for this offense when the Molotov Cocktails were discovered.*

      **xv.** At the time of Temple's arrest for the December 4, 2020, MIW offense (number xiv above), Mr. Temple was on pre-trial release for two Arizona state felony drug charges from a March 2020 arrest. It appears that in a global resolution with the Misconduct Involving Weapons charge on October 28, 2020, a drug possession charge was dismissed, but Temple was sentenced to a probation tail for a Class 6 Undesignated Possession of Drug Paraphernalia charge. That probation term was set to begin upon his release from DOC, which happened on August 11, 2022.

Mr. Temples lengthy criminal history establishes his unwillingness to comply with the law. When considered with his stated belief that the law is wrong and he is entitled to possess firearms pursuant to the Constitution, his criminal history is especially telling regarding the likelihood that he will comply with the law going forward.

    k. **Record of appearance for court proceedings**

As noted in subparagraph j (ix and x) above, Mr. Temple had been convicted for failing to appear at court proceedings as directed. Mr. Temple cannot be trusted to appear in court as ordered. This is especially true when the court considers that he fundamentally disagrees with the law that brings him before this court.

4. **Nature and seriousness of the danger to any person or the community**

Prior to his most recent incarceration, Mr. Temple was associating with Persons identified with the boogaloo movement. Despite his felony convictions, and knowledge of the law to the contrary, Mr. Temple maintains a belief that he can nonetheless possess firearms and has done so. Further, the weight of the evidence in the present case establishes by clear and convincing evidence that Mr. Temple possessed Molotov

Cocktails. Prior statements to RS present a troubling picture of a man who built a Ghost Gun to kill politicians. That statement, coupled with his association with a movement that is anticipating a violent civil dispute due to government overreach, establishes Mr. Temple's serious danger to the community.

**Conclusion**

Mr. Temple presents as a man who checks every box in Title 18 United States Code, Section 3142(g) in a bad way. Such a man presents both a danger to the community and a flight risk. While Mr. Temple could benefit from the services available at Crossroads, where he has been conditionally accepted, that acceptance does not overcome his risk of flight or danger to the community. Consideration of the nature and circumstances of the charged offense, coupled with the weight of the evidence against Mr. Temple, and his history and characteristics, Mr. Temple should be detained as a flight risk and a danger.

Respectfully submitted this 28th day of September, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Glenn B. McCormick*
GLENN B. McCORMICK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on 28th day of September, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Stephen S. Garcia

_s/Glenn B. McCormick_
U.S. Attorney's Office