GARY M. RESTAINO
United States Attorney
District of Arizona
GLENN B. McCORMICK
Assistant U.S. Attorney
Arizona State Bar No. 013328
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: glenn.mccormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Wesley Warren Temple,<br><br>　　　　Defendant. | CR- 22-01107-PHX-JJT(JZB)<br><br>**UNITED STATES' MOTION FOR U.S.S.G. § 5K2.23 DEPARTURE AND SENTENCING MEMORANDUM** |

　　　Now comes the United States of America, by and through its undersigned attorneys, and submits this Motion for United States Sentencing Guidelines (U.S.S.G.) § 5K2.23 Departure and Sentencing Memorandum. Consistent with the Plea Agreement, the United States recommends a sentence of 19 months less than the low end of the U.S.S.G. range. The anticipated U.S.S.G. range is 84 to 105 months.  Assuming a different calculation is not determined during the sentencing hearing, the United States will recommend a sentence of 65 months in the Bureau of Prisons followed by a 36-month term of Supervised release. The United States does not recommend a fine but does recommend imposition of the $100 Special Assessment.

**Charged Offense**

　　　Wesley Warren Temple (Temple) was indicted on August 30, 2022, for one count of Possession of a Firearm (19 Molotov Cocktail incendiary devices) Not Registered in the National Firearms and Transfer Record, Title 26, United States Code, Section 5861(d).

[Doc 1.] On August 30, 2023, Temple entered a plea of guilty to the count in the indictment, pursuant to a Plea Agreement. [Lodged as Doc. 38].

**Investigative Discoveries**

Law enforcement officers were investigating certain individuals who had entered upon Federal Bureau of Investigation (FBI) property on several occasions, where they placed stickers depicting symbolism associated with the boogaloo movement near secure entry points. The boogaloo is not a single cohesive group, but rather a loose concept arising from internet platforms which has become a rallying point for some fringe politically motivated groups. The concept has resonated with such fringe groups to reference an impending politically-motivated civil war or uprising against the government following perceived incursions on Constitutional rights—including the Second Amendment—or other perceived government overreach.

On December 3, 2020, FBI Special Agents and Federal Protective Services Officers went to the residence of one of the individuals suspected of placing the stickers on FBI property, to serve him with violation notices relating to those acts. Upon making contact with the individual, Temple was found to be with him at his residence. Temple admitted to agents that he was involved with placing the stickers on FBI property. He also admitted to being a prohibited possessor.

On December 4, 2020, while surveilling another of the persons associated with placing boogaloo stickers on FBI property, Temple was observed arriving at this person's residence and placing what appeared to be an AR-15 style firearm in the trunk of a car registered to the person being surveilled. Temple and the vehicle owner entered the car and drove off. A traffic stop of the vehicle was conducted at approximately 70 S. 17th Avenue, Phoenix, Arizona, near the State Capital grounds, where an active protest was taking place. Both were initially non-compliant, identified themselves as sovereign citizens, and refused to get out of the vehicle. Eventually, Temple complied and was taken into custody without further incident. However, the other individual got out of the car, was seen to have a firearm holstered on his hip, then got back in the car. Negotiations failed to get the individual to

submit to the stop, and Phoenix Police Special Assignment Unit officers were forced to go in tactically to arrest him. Both Temple and the other individual were wearing Hawaiian shirts, which are an item of clothing persons who associate with the boogaloo movement wear to identify themselves as such.

Temple admitted to bringing the firearm and three magazines loaded with about 90 rounds of ammunition to the other persons residence, because they were going to go shooting after the protest. Temple identified the firearm as a homemade "Ghost Gun," but would not say who made it. Ghost Guns are typically made from firearms parts purchased over the internet and assembled into a working firearm. Some have no serialized parts and are untraceable. The Ghost Gun was seized from the trunk of the stopped vehicle.

Temple told agents that he does not intend to comply with laws that prohibit him from owning or possessing a firearm. When Temple was questioned about why he was non-compliant during the traffic stop, he replied, "Look, it's no secret, the cat's out of the bag, [about] what we believe in and who we are." Temple explained further that they didn't believe they should have to yield to officers for "no reason". Temple said just because he's a felon shouldn't mean he can't be around firearms. Temple said he's had firearms in his home, and he didn't understand how that wasn't allowed. Temple said he didn't plan on complying with any the gun laws. Temple said he's tired of complying with laws that violate the Constitution, that he's tired of being pushed around, and then referred to being arrested as the same thing as being kidnapped.

Temple was convicted of Misconduct Involving Weapons, a class 4 felony in Maricopa County Superior court, on October 28, 2021, for possessing the firearm, and sentenced to 2.5 years in the Arizona Department of Corrections. Temple remained in custody from his arrest on December 4, 2020, until his release from the Arizona Department of Corrections on August 11, 2022.

Temple's then-wife, RS[1], was interviewed by agents on December 29, 2020, related to the car Temple had driven to the fellow boogaloo's house, shortly before his December 4, 2020, arrest. The car belonged to RS. During that interview, RS told agents, among other things:

1. Temple felt it was his right to have a firearm, and that it was still his Constitutional right to have firearms even though he was a convicted felon.

2. When asked if Temple had ever talked about hurting anyone else and she said "I hate saying this. Um, he did mention at one point that Ghost Guns were built to kill politicians." When asked why she "hate[d]" saying that, she said it was because she knew "snitches get stitches." RS was asked what she and Temple were talking about when he told her that Ghost Guns were made to kill politicians. RS said he said he made the comment after she asked him why he built a gun.

3. Agents asked RS when Temple started wearing the Hawaiian shirts and she said sometime in April [2020] he went on a "meth bender", she sent him to the "funny farm", he came back suicidal, and then sometime around May he started getting involved more in the movement. RS said she believed Temple learned about it all on-line and from talking to people who were like minded. RS thought it was just his way of expressing his political views, but then she believed he started communicating with people on "me-we" which she believed to be a dark web site.

On January 30, 2021, while preparing to move from a house Temple and RS had leased, RS discovered five cardboard four-bottle ginger beer carrying packages with 19 Molotov Cocktails in them. An empty twentieth bottle was also in one of the packages. RS found the Molotov Cocktails in a garage cabinet that she described as an area only used by

---

[1] A default decree was filed October 13, 2021, finalizing Temple's and RS's divorce.

- 4 -

Temple.

Although their relationship was rocky, RS maintained contact with Temple while he was detained in the Maricopa County Jail, pending resolution of the state Misconduct Involving Weapons charge. Contact was via electronic communications: RS on her phone and Temple on a tablet provided by the jail. RS contacted Temple after discovering the Molotov Cocktails and had the following text conversation with him:

RS: So, found your Molotov cocktails. Not really sure how to dispose of those. Real fucking classy totally peaceful protest, right?

Temple: And here we go...I knew it wouldn't be long before you were mad at me again. Sweet. I would never use anything like that against humans... it was gonna [sic] be some fun out in the desert after the fire restrictions were lifted. Not really a big deal. You can throw them away as is, not a big deal

RS: Care to explain?

Temple: Yes, they have caps and are sealed. just leave them in the cardboard And put them in the cans outside. they are stable because of the used motor oil in them. the trash people will separate them

RS: They won't blow up when they get dumped into the garbage truck?

Temple: They are stable...the motor oil in them makes them stable. No, they won't blow up. lol.

Through her interactions with FBI agents on December 29, 2020, related to Temple's December 4, 2020, arrest, RS had contact information for agents associated with the investigation. Out of safety concerns, and not wanting any involvement with the Molotov Cocktails, RS contacted FBI agents associated with the investigation and asked them to come retrieve the Molotov Cocktails. On January 31, 2021, while conducting a consent search and retrieving the Molotov Cocktails, RS showed agents the above text

conversation with Temple.[2]

The FBI laboratory later identified the items as incendiary devices consisting of 19 glass ginger beer bottles containing a gelatinous polystyrene substance, gasoline, and motor oil, with original bottle caps secured on each of them. Cloth wicks were located next to each bottle in the cardboard packaging. The bottles were also examined for fingerprints and DNA. Temple's fingerprints were found on one of the bottles.  Temple's DNA was found on several of the bottles. It should also be noted that DNA from an unidentified female was also located on some of the bottles.

During a September 1, 2022, post arrest interview, Temple indicated that he knew items were seized from his home on January 31, 2021, but did not like the agent's use of the term "Molotov Cocktail."  Temple claimed he only knew about plastic jugs containing automotive fluids being in the garage and thought that was what RS was referring to in their text exchange. Temple stated that he knew what a Molotov Cocktail was because of the Internet. He described them as a bottle of flammable fluid that's broken with the intent of firebombing something, and it's ignited by a flammable source such as a match. When confronted about the text conversation with RS, Temple said that he was talking to RS about one-gallon plastic jugs filled with various automotive fluids, not Molotov Cocktails. Temple also stated that he had no other way to dispose of the jugs and their contents, so he figured "let's go blow some shit up".  Temple reiterated he did not "manufacture any firebombs."

Temple's untruthful interview statement failed to account for his statements to RS that "they have caps and are sealed," "just leave them in the cardboard," and "they are stable because of the used motor oil," contrary to his claim to agents that he was only referencing plastic jugs containing automotive fluids, and not "firebombs." Each of the

---

[2] Agents also obtained Temple's text communications from the Maricopa County Sheriff's office by subpoena. The Maricopa County Sheriff's Office provides inmates notice that communications over the jail provided tablet are subject to monitoring.

ginger beer bottles had original caps repositioned on them to form a seal, all of the bottles were in cardboard containers, and they contained gasoline and used motor oil.

**U.S.S.G. § 5K2.23 Supports a 19-Month Reduction to the U.S.S.G. Range[3]**

The U.S.S.G. provide for a departure to achieve a reasonable punishment, when a *discharged*[4] term of imprisonment "would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." U.S.S.G. § 5K2.23. The state sentence Temple served from December 4, 2020, through January 11, 2022, for his Misconduct Involving Weapons conviction is just such a discharged term of imprisonment.[5] When a "state term of imprisonment is anticipated[6] to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of U.S.S.G § 1B1.3 (Relevant

---

[3] The parties negotiated the United States' agreement to recommend a sentence of 19 months less than the low end of the sentencing range to account for 19 months Temple served in AZDOC for relevant conduct, pursuant to 5K2.23. That recommendation was inserted into the United States standard plea agreement recommendation language which states, "[p]ursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend a sentence of [nineteen (19) months less than] the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a), *before any other departures or variances considered by the court under U.S.S.G. § 1B1.1(b)*." During preparation for sentencing, the United States noticed that1B1.1(b) includes adjustments to the U.S.S.G. calculation pursuant to Part K of Chapter 5, which includes 5K2.3. It was not the intent of the United States to recommend a sentence of 19 months less than the low end of the range before the application of 5K2.23, which would independently support an additional 19-month reduction. However, the wording of the plea agreement can be read to do just that. Counsel for the defendant agrees that the parties intended the 19-month reduction to account for Temple's discharged relevant conduct sentence to AZDOC and that the agreement did not intend for the 19 months to be deducted twice.

[4] Meaning, already served.

[5] Temple was in custody pursuant to his December 4, 2020, arrest for the Ghost Gun when agents recovered the 19 Molotov Cocktails from his home on January 31, 2021. Therefore, Temple was in possession of both the Ghost Gun and the Molotov Cocktails at the same time.

[6] U.S.S.G. § 5G1.3(c) specifically addresses state sentences that are *undischarged*, but § 5K2.23 provides for similar application of § 5G1.3(c) to state sentences that have already been discharged, as in the present situation.

Conduct), the sentence of the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. § 5G1.3(c).

The "Ghost Gun" possessed by Temple on December 4, 2020, which resulted in his state Misconduct Involving Weapons conviction[7] and sentence, and the 19 Molotov Cocktails he possessed in the present case were all possessed at the same time and in relation to his boogaloo movement beliefs. As such, the state conviction and the present one, are Relevant Conduct. Relevant Conduct includes all acts committed by a defendant that occurred during the offense of conviction, U.S.S.G. § 1B1.3(a)(1)(A), and "with respect to offenses of a character for which U.S.S.G. § 3D1.2(d) would require grouping of multiple counts…" U.S.S.G. § 1B1.3(a)(2).  U.S.S.G. § 3D1.2(d) provides that [o]ffenses covered by [§ 2K2.1] are to be grouped." U.S.S.G. § 2K2.1 is the applicable Guideline for the current offense, and would have been for Temple's Misconduct Involving Weapons conviction, had it been charged federally with the comparable Title 18, U.S.C. § 922(g)(1) charge. Therefore, had the offenses been charged in the same indictment, or even two separate indictments, the offenses would have been grouped to determine the appropriate U.S.S.G. sentencing range.

**U.S.S.G. § 3D1.1 Grouping**

U.S.S.G. § 3D1.1 requires the court to group counts[8] into "Closely Related Counts ('Groups')" pursuant to § 3D1.2, determine the offense level for each Group pursuant to § 3D1.3, and to determine the combined offense level for the Groups by applying § 3D1.4. However, in the present situation, possession of the Molotov Cocktails and the Ghost Gun

---

[7] The specific provision of A.R.S. 13:3102(a)(4), Possession of a Weapon by a Prohibited Person, for which Temple was convicted in Maricopa County Superior Court, is in essence the same as a Title 18 U.S.C. § 922(g)(1) felon in possession of a firearm charge, sans the interstate commerce element.

[8] Multiple counts of conviction may be from the same indictment or multiple indictments. § 3D1.1, Note 1.

- 8 -

are grouped together in a single group that will be represented by a single offense level. Therefore, § 3D1.4 is not specifically applicable in this case.

**§ 3D1.2(d) Groups**

This subsection requires grouping of counts into a single group where the "offense level is determined largely on the basis of … some [] measure of aggregate harm" and specifically provides that offenses covered by § 2K2.1 are to be grouped under 3D1.2(d). § 2K2.1 applies to offenses involving possession of firearms (which includes incendiary devices like Molotov Cocktails) as in the present case and would apply to the state conviction for the Ghost Gun had it been charged federally. The U.S.S.G. contemplate that firearms offenses, such as those in the present situation, for which the Guidelines are primarily based on quantity are to be grouped together. § 3D1.2(d), Note 6.

**§ 3D1.3 Group Offense Level**

When counts are grouped pursuant to § 3D1.2(d), the offense level is determined by the aggregated quantity as determined using Chapter Two and Parts A, B, and C of Chapter Three of the U.S.S.G. The Draft Presentence Investigation Report (PSR) [Doc. 43] provides the court with an Offense Level Computation that considers Chapters Two and Three as required. [PSR pp. 19 – 30.] The PSR computation starts with a § 2K2.1 Base Offense Level of 20, because the 19 Molotov Cocktails fit the definition in § 2K2.1(a)(4)(B)(i)(I)[9]. Four levels are added pursuant to § 2K2.1(b)(1)(B) to account for the 19 Molotov Cocktails. That subparagraph applies to situations were 8 to 24 firearms are involved. Because grouping the single Ghost Gun raises the aggregate count to 20 firearms, the same subparagraph is applicable and the Total offense level of 23, and applicable range of 84 to 105 months, does not change.

---

[9] The PSR at paragraph 20 references § 2K2.1(a)(4)(B)(i)(II). (II) is applicable to persons convicted under Title 18 U.S.C. §§ 922(d), which involves the sale or disposition of a firearm to another person. (I) is applicable to persons who were prohibited from possessing firearms at the time of the offense, as was Temple in this case.

- 9 -

**Adjusting for the Discharged Term of Imprisonment for the Ghost Gun**

To account for the discharged term of imprisonment Temple served for the Ghost Gun when determining the appropriate grouped sentence in the present case, time served from January 31, 2021, when the Molotov Cocktails were recovered, to August 11, 2022, when Temple was released from the Arizona Department of Corrections (approximately 557 days, or between 18 and 19 months) should be subtracted from the range calculated for the Ghost Gun and Molotov Cocktails pursuant to U.S.S.G. §§ 2K2.23, 5G1.3, and the U.S.S.G. §§ 1B1.3 and 3D1.2 grouping analysis above.

**Conclusion**

The United States recommends a departure of 19 months less than the low end of the U.S.S.G. range calculated in this case. The recommended sentence is intended to avoid an unreasonable punishment that in effect creates consecutive sentences for offenses that U.S.S.G. § 5K2.23 requires to be served concurrently. The United States requests the court to find that Temple's possession of the Ghost Gun was an act committed during his possession of the 19 Molotov Cocktails and was an act for which U.S.S.G. § 3D1.2(d) requires grouping. Therefore, pursuant to the U.S.S.G. computation in the PSR of Total Offense Level 23, Criminal History Category V, and an applicable range of 84 to 105 months, the United States recommends that the court impose a sentence of 65 months to be followed by a 36-month term of Supervised Release. The United States further recommends that no fine be imposed but does recommend the imposition of the $100 Special Assessment.

Respectfully submitted this 30th day of November, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Glenn B. McCormick*
GLENN B. McCORMICK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on 30th day of November, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Stephen S. Garcia

 _s/Glenn B. McCormick_
U.S. Attorney's Office