**GARCIA LAW, PLLC**
Stephen S. Garcia (SBN#23652)
20860 N. Tatum Blvd., Ste. 180
Phoenix, Arizona 85050
Telephone: 602-753-5593
Facsimile: 602-715-1444
steve@stevegarcialaw.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

     Plaintiff,

     vs.

Wesley Warren Temple,

     Defendant.

Case No. 2:22-cr-01107-JJT-1

DEFENDANT'S SENTENCING MEMORANDUM WITH MEMORANDUM OF POINTS AND AUTHORITIES

Defendant, Wesley Warren Temple, by and through undersigned counsel, respecftully submits this sentencing memorandum and attached Memorandum of Points and Authorities. Mr. Temple pled guilty to Possession of a Firearm Not Registerred in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d), a Class C felony. Sentencing is set before this Court at 10:00 a.m. on December 11, 2023.

Mr. Temple requests this Court to impose 3 years of supervised release following his incarceration, but to also grant a variance that would put Mr. Temple in the U.S.S.G. advisory guideline range for a Level 23 Offense, and a Criminal History **Category of II, rather than a Category V**, which results in a guideline range of 51-63 months. In turn, defense asks this Court

to impose a low-end sentence of **51 months of imprisonment**.  Truly, even less would be appropriate given the following circumstances.

RESPECTFULLY SUBMITTED this  12th  Day of January, 2024.


GARCIA LAW, P.L.L.C.


*/s/ Stephen S. Garcia*
Attorney for Defendant




MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
SENTENCING MEMORANDUM

**Procedural History:**

The Defendant files this Memorandum, and requests this Honorable Court to grant a variance that would result in Mr. Temple landing in the U.S.S.G. advisory guideline range for a Level 23 Offense, and a Criminal History Category of II, rather than a Category V.  This request in made in accordance with  18  U.S.C. Section 3553(a).   The presentence report and recommendation ("PSR") recommends a prison sentence of 84 months, which is at the low end of the U.S.S.G. advisory guideline range for a Level 23 Offense, and a Criminal History Category V.  *See* PSR: **23**.  Before making this recommendation, the PSR also notes that "the plea agreement stipulates the government will recommend a sentence of 19 months less than the low end of the sentencing range, before any other departures or variances are considered by the

Court." *See* PSR: 20, ¶101.  The PSR is referencing the plea agreement, which in relevant part provides:

> "3. a. <u>Recommendation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend a sentence of nineteen (19) months less than the low end of the sentecing range as calculated under U.S.S.G. § 1B1.1(a), before any other departures or variances considered by the court under U.S.S.G. § 1B1.1(b)."

> *See* Plea Agreement: 2.

The United States of America, in turn, filed a motion that asks for a U.S.S.G. § 5K2.23 departure and provides a sentencing memorandum, requesting this Honorable Court grant a departure of nineteen (19) months less than the low end of the U.S.S.G range.  (*See* 11-30-23 U.S.A. motion for departure and sentencing memorandum: Document #46: 1).  In a footnote, the United State's clarifies an important point—the parties' intent was for the 19-month reduction to account for the time Mr. Temple served for a local State crime and to not have the 19-month reduction be counted twice for the same reasoning.  *Id.*: 7.  The United States government agrees with the PSR's calculations that the anticipated sentencing guideline range (absent a different calulation determined at the time of sentencing) is 84 – 105 months.  *Id.*: 1.  Therefore, the United States recommends a sentence of 65 months, which is, of course, 84 months less 19 months.  *Id.* This to be followd by a 36-month term of supervised release.  *Id:* 1 & 10.

Of note, nothing in the plea agreement prohibits Mr. Temple from requesting or the Court authorizing any adjustments or departures pursuant to the Sentencing Guidelines.  In addition nothing in the plea agreement prohibits Mr. Temple from arguing for, or the Court from granting, a variance under 18 U.S.C. § 3553(a) in support of a sentence below the final advisory Sentencing Guideline range.  Nothing precludes the United States from opposing any adjustments, departures, or variances either.

**Recommendation:**

As we know, the goal of sentencing is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553 which states:

18 U.S.C. § 3553.  Imposition of a sentence

(a) Factors to be considered in imposing a sentence.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
   (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2)  the need for the sentence imposed--
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   ...
   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense.

Under the circumstances, **a variance** that also reflets Mr. Temple's journey to take responsibility as well as his good deeds that reflect Mr. Temple's true charracter would be sufficient, but not greater than necessary to accomplish the statutory goals of sentencing pursuant to 18 U.S.C. 3553(a).

Mr. Temple is very sorry for what occurred here.  He takes responsibility and assures this Court that he will never engage in this, or any other type, of criminal behavior again.  He has been on a very long path to try to accept responsibility and make amends for his past criminal behavior.  He has learned a lot in the recent years.  Regarding the laws of the United States of America that relate to owning and possessing firearms, Mr. Temple intends to fully comply with the laws.  Put another way, Mr. Temple is no longer going to own or possess any firearm.

Mr. Temple knows that his behavior in the underlying matter was reckless. He is not this reckless individual any longer. A variance that would allow for a lesser prison term than 65 months, to be followed by a term of supervised release, would ensure that the goals set forth in 18 U.S.C. §3553(a) are achieved. Defense submits that 65 months of incarceration is greater than necessary to satisfy the purposes of sentencing.

By trade, under the Department of Fire and Forestry Management, Mr. Temple was a wildland firefighter for the State of Arizona. (*See* Attachment A). The hire date was February 26, 2018 in Phoenix, Arizona. His contributions include fighting many fires where property and valuables have been saved due to the efforts of him and his fire crew. Mr. Temple was able to turn his experience with fighting fires in prison into working full-time as a wildland firefighter in Phoenix, Arizona from 2018 – 2020. *Id.* Sadly, this is not often the case for many.

To Mr. Temple's credit, he absolutely made the most of his incarcation time. Mr. Temple's background as a firefigher comes from a previous incarceration term and subsequent work assignment on the fire crew at the Arizona State Prison Corrections at Yuma. Mr. Temple successfully completed his 2.5-year prison term that arose from an Agg. DUI conviction in 2016, without any disciplinary record. He also successfully completed his community supervision and kept the positive momentum moving forward. In fact, Mr. Temple has not had any disciplinary action throughout any of his prison terms. (*See* Attachment B).

Mr. Temple is very proud, as he should be, of his contributions to society as a firefighter. But, more importantly, he is very happy that he was able to make an actual difference for so many. He truly did not pose a threat to society. Though Mr. Temple had some strong beliefs about government, laws, and firarms, Mr. Temple no longer holds onto those strong beliefs. Those beliefs were immature and potentially dangerous. He loves his country and intends to follow the laws of the United States of America. He understands his former strong beliefs and actions were misguided. Mr. Temple wants to do good, not bad.

Mr. Temple has battled against substance abuse issues for most of his life. He has suffered tremendously as a result. It will continue to be a life-long battle for him. He appreciates the fact that the major issues in his life stem from substance abuse. Though it is not so much apparent given that Mr. Temple is currently incarcerated, he actually is on the right path. He has begun, and even completed in some cases, paying back his debts to society by serving jail and prison time. Mr. Temple has a good attitude toward serving his prison time because it is productive. Serving his time puts him that much closer to showing that he can live a law-abiding lifestyle and resuming a productive and sober life. Mr. Temple is working through his debts to society and takes it day-by-day. But, he has a watchful eye on the future and hopes to continue on the path of helping others.

Mr. Temple was not only focused on helping others through his chosen vocation, but he also used his freedom to attend therapy. Mr. Temple was actually doing pretty well before being taken into custody on December 4, 2020. For context, Mr. Temple was arrested on December 4, 2020 for what would result in the local conviction of Misconduct Involving Weapons that occurred that same date (12-04-20), as well as for a Possession of Drug Paraphernalia conviction that actually occurred approximately 2 years earlier on October 9, 2018. Before being arrested in December of 2020, Mr. Temple completed an intense outpatient substance abuse treatment program. Attached is a letter from Mr. Temple's therapist confirming his completion of the Intensive Outpatient Program at Renaissance Recovery Center from April of 2020 until August 3, 2020. (*See* Attachment C). To be sure, the program was intense. It also included weekly multiple UA testing and 12-step meetings. *Id.*

Voluntarily, Mr. Temple continued to participate in recovery, seeing a therapist regularly to maintain not only his sobriety, but well-being in general. (*See* Attachment C). He chose to continue his treatment in Renaissance's Aftercare program, which requires weekly UA tests, group therapy, and meetings. *Id.* His UA tests were negative for both alcohol and drugs. *Id.*

You can also see that participating in AA meetings was a mandatory condition to receive counseling from Dorna S. McBride, LPC. *Id.*

Mr. Temple had garnered a tremendous amount of positive momentum, but then he was arrested on December 4, 2020. When arrested, he was on his way in support of a protest rally. He would end up serving a 2.5-year prison term for the Misconduct Involving Weapon offense that occurred that December day. He was not released from prison until August 11, 2022. Though it was a disappointment to be in prison, he was happy to serve that time and be able to move forward after getting it behind him. After Mr. Temple completed his 2.5-year prison term he was arrested approximately 3 weeks later on September 1, 2022 for the underlying offense that occurred on January 31, 2021. He was arrested at where he was residing—New Freedom. *See* PSR: 4, ¶13. New Freedom is a 90-day in-patient reentry program. It is voluntary. Also, in order to be eligible to reside there, a person must complete a program in prison to be approved. Mr. Temple did so.

It was a huge setback to land back in prison after being released weeks earlier, but again Mr. Temple has a good attitude about putting his matters behind him once and for all. He does look to accept responsibility and continue on a positive path once released. He views his prison sentences as on the path toward getting closer to returning to do good for society, doing well for himself, and, not to be overlooked, making amends with his family and trying to make them proud. Only this time, he knows that guns and any firearm will not be a part of his life.

The bulk of Mr. Temple's criminal history is directly or indirectly related to substance abuse, including alcoholism. His two most recent convictions involved possession of a gun and the underlying offense involving possessing Molotov Cocktails. Mr. Temple has been sober for years now and can attest to this Honorable Court that he will not possess or be in the vicinity of any firearms again. A 65-month prison sentence is not necessary to serve the aims of 18 U.S.C.

§3553(a). In light of Mr. Temple's relatively recent demonstration to perform good acts, participate in treatment and counseling, and sincerely accept responsibility for his actions, a reduced prison sentence would achieve the aims that sentencings attempt to accomplish.

## I. MITIGATING FACTORS:

a. <u>The totality of the circumstances, mercy and the Court's own sense of what is fair and just warrants a sentence that does not impose 65 months of imprisonment.</u>

This Honorable Court can consider the totality of the circumstances outlined above, mercy and its own sense of what is fair and just in determining an appropriate sentence. Further, in this post-*Booker* era, the totality of the circumstances seem even more appropriate than ever. *See e.g., U.S. v. Jones, 460 F.3d 191 (2nd Cir. 2006)* (where defendant convicted of felon in possession and possession of firearm and guidelines were 36 months, district court properly imposed non guideline sentence of 15 months when he considered his own sense of what was fair and just. "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section *3553(a)*, the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.") *Id. at 195.* Defense knows that this Court appreciates that it is imperative that mercy and compassion be an important part of justice in fashioning the appropriate sentence.

As the United States points out in its November 30, 2023 Motion for Departure and Sentencing Memorandum, Mr. Temple's conviction that resulted from possessing a gun on December 4, 2020, and the 19 Molotov Cocktails that are the subject of this underlying conviction "were all possessed at the same time...." *See* Motion for U.S.S.G. § 5K2.23 Departure and Sentencing Memorandum: 8, ¶1 (Doc. #46). In turn, the convictions "are

Relevant Conduct" and "are to be grouped." *Id*. The United States concludes in that first full paragraph on page 8 of its memorandum, "Therefore, had the offenses been charged in the same indictment, or even two separate indictments, the offenses would have been grouped to determine the appropriate U.S.S.G. sentencing range." *Id*. The United States also correctly pointed out in a footnote on page 7 of its memorandum that "Counsel for the defendant agrees that the parties intended the 19-month reduction to account for Temple's discharged relevant conduct sentence to AZDOC and that the agreement did not intend for the 19 months to be deducted twice." *Id*. at 7, Footnote #3.

While it is true that the 19-month reduction does account for the prison time served as a result of the relevant conduct, it does not account for the 3 additional points incurred as a result of application of U.S.S.G. § 4A1.1(a). Thus, Mr. Temple has accrued 11 points, resulting in a Criminal History Category 4 . Had the 3 extra points not accrued, he would have had 8 points, resulting in a Criminal History Category 3, with a range of 70 – 87 months. Deducting 19 months from the low-end sentence of 70 months, would have resulted in a sentence of 51 months.

On top of the 3-point application context, Mr. Temple is a 43-year-old man who has come face-to-face with reality. No more firearms. He also meant no harm. Be that as it may, he also understands the recklessness of storing the Molotov Cocktails as he did. He truly understands the need for laws in general and gun laws specifically. He appreciates the need for the laws that criminalize possessing a firearm(s) due to being a prohibited possessor as well as those that criminalize the failure to register the firearms. Mr. Temple actually appreciates the necessity for law and order and the necessity to respect law and order. He is hard working, well intentioned, and does not intend to continue breaking any laws. He knows criminal behavior of

any kind is not the right thing to do.  He has promised to himself that he will never do anything like this again.  He now makes that promise to this Court and the government.

Sixty-five months of prison to deter Mr. Temple from future criminal conduct is not needed.  Though he does prior convictions, he assures this Court that this conviction accentuates the serious ramifications of breaking the law—any law.

> b.  Incarceration would violate the "parsimony provision" because a lesser
>     sentence is sufficient to achieve the purposes of sentencing.

Though the underlying offense is very serious, please take into account that Mr. Temple did not mean harm to anyone.  He did not intend to use the Molotov Cocktails in a malicious manner.  Nevertheless, and not to minimize the seriousness of the offense, Mr. Temple appreciates the wrongfulness of his conduct.  Although he has a criminal history, he also has a demonstrated propenstiy for good acts as well—volunteering and working as a firefighter, attending substance abuse treatment, and not committing disciplinary infractions while in custody.

Sixty-Five (65) months of imprisonment would be greater than necessary to satisfy the purposes of sentencing.  The goal of a district court is to impose a sentence that is sufficient to, but not greater than necessary to satisfy those purposes.  *U.S. v. Yopp*,  453 F.3d 770 (6th Cir. 2006).  Judges must consider all of "the kinds of sentences available, 18 U.S.C. § 3553(a)(3), even if the knids of sentence . . . established [by] the Guidelines" permit or encourage only prison.  *See Gall*, 552 U.S. at 59 & n.11.  Congress intended that probation and other alternatives would be permissible for all offenders except those convicted of a crime of violence resulting in serious bodily injury.  *See* 28 U.S.C. § 994(j).  Probation is authorized by statute for a broad range of offenses and offenders, i.e., for any offense with a statutory maximum below 25 years so long as probation is not expressly precluded and the defendant is not sentenced to prison for a

non-petty offense at the same time. *See* 18 U.S.C. § 3561(a); 19 U.S.C. § 3559(a).

While probation will not be a part of Mr. Temple's sentence, supervised release will be part of it.  Imprisonment, of course, will be the other part of it.  Federal courts continually recognize that "Many times we have emphasized that a district court's mandate is to impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [§ 3553(a)(2)]." *U.S. v. Hein  463 F.Supp.2d 940 (E.D. Wisc. 2006)* (where defendant convicted of being felon in possession of ammunition, the guideline term of 12-18 is "greater than necessary to satisfy the purposes of sentencing" because no indication he knew he was violating law or selling to felons, because health poor and where he was primary caretaker of his children, and favorable probation recommendation). *Id.* at 942.

Less than 65 months of imprisonment plus the supervised release would still reflect a sentence that satisfies the goals of 18 U.S.C. §3553(a)(2), especially in light of Mr. Temple's acknowledgment that he should not have been around firearms of anykind and will not be again.

c.  Mr. Temple's otherwise outstanding character:

Mr. Temple has been a productive member of society, a loving and caring father, and a valued employee.  As mentioned, he has helped others by fighting fires.  He has always been a hard worker though.  As a young man, he worked hard in the food industry as a server.  He has always had a work ethic, whether in custody or out.  It also worth mentioning again that he had the good sense and the ability to participate in and complete substance abuse treatment. (*See* Attachment C).

Notwithstanding the underlying conviction and past convictions, Mr. Temple will not make the wrong decision again.  The court can consider his otherwise outstanding character in fashioning an appropriate sentence. *U.S. v. Wachowiak  412 F.Supp.2d 958  (E.D. Wisc. 2006)*

(where a 24-year old music student convicted of possessing child pornography, and the guidelines range was 121-151 months,  and where he was in treatment and low risk of recidivism, had strong support from family, court imposed 70 months in part because "the guidelines failed to consider defendant's otherwise outstanding character... while *§ 3553(a)(1)* requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range.") (Citations omitted). *Id.* at 963.

        d.   <u>Incarceration would have a harsh effect on innocent family members and society will benefit more from defendant's support of his family than from incarceration.</u>

Mr. Temple has a teenage daughter who he loves very much. He looks forward to returning to life on the outside of prison walls so that he can be a part of her life. He also very much wants to make her proud. From Mr. Temple's mistakes as well as his positive attributes, he has much to offer her. And, of course, he looks forward to fighting fires again too.

These are additional factors that the court can consider in fashioning an appropriate sentence. *U.S. v. Galante, 111 F.3d 1029 (2d Cir.1997)* (affirms district court's 13-level downward departure in drug case from 46-57 months to 8 days where Defendant showed he was a conscientious and caring father of two young sons who would have faced severe financial hardships); *U.S. v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) ("Among the permissible justifications for downward departure ... is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties.") *Id.* at 7.; *U.S. v. Rivera*, 994 F.2d 942 (1st Cir. 1993). It is noteworthy that the reasoning used in the *Rivera* case was largely adopted in the Supreme Court's opinion in *Koon v. U.S.,* 518 U.S. 81, 113 (1996). *Rivera* at 952-54.

## II.    CONCLUSION:

Though Mr. Temple has a criminal history, Mr. Temple also has has a history of taking responsibility and for doing good in the community.   It is respectfully requested that this Honorable Court grant a variance that would reflect a proportionate sentence given the circumstances.   A lesser sentence than 65 months in prison plus the supervised release term would reflect the seriousness of the offense, promote respect for the law, provide a just punishment, protect the public, and afford adequate deterrence to criminal conduct.   In light of all the circumstances, such a sentence would be a fair and equitible disposition.

**RESPECTFULLY SUBMITTED** this  12th  Day of January, 2024.


GARCIA LAW, P.L.L.C.


*/s/ Stephen S. Garcia*
Attorney for Defendant

I hereby certify that on January 12, 2024:

I electronically transmitted the attached
document to the Clerk's Office using the
CM/ECF system for filing and transmittal
of a Notice of Electronic Filing to the following
CM/ECT registrants:

Honorable John Joseph Tuchi and
Brooke T. Afshari, Assistant U.S. Attorney

Courtesy copy of draft order e-mailed to:

Honorable John Joseph Tuchi
Tuchi_chambers@azd.uscourts.gov

Glenn B. McCormick, Assistant U.S. Attorney
Glenn.McCormick@usdoj.gov

Todd J. Barrett, U.S. Probation Officer
Todd_Barrett@azd.uscourts.gov


By: _/s/Stephen S. Garcia_

**ATTACHMENT A**

Current Employment | For Lawson

Job Profile

## Job Profile

| | |
|---|---|
| Employee Name | WESLEY W. TEMPLE |
| Employee Number | 183826 |
| Employee Status | UNCOVERED W/BN |
| Process Level | FO-PERMANENT STAFF |
| Department | DFFM PERMANENT STAFF |
| Accounting Unit | District 4 CREW GENERAL FUND - |
| Location | ADOA MAIN PAYROLL |
| Supervisor | PHX CREW CAPTAIN |
| Position | FIREFIGHTER 1 |
| Job | FIREFIGHTER 1 |
| At-Will Status | UNCOVERED |
| Law Enforcement Status | NON-LAW ENFORCEMENT |
| Work Phone | 602-619-4298 |
| Work Phone Extension | |
| Work Email | WTEMPLE@DFFM.AZ.GOV |
| Personal Email | wtemple762@gmail.com |
| Home Phone | 7024234642 |
| Hire Date | 02/26/2018 |
| Adjusted Hire Date | 02/26/2018 |
| Pay Rate | 15.0800 |

**ATTACHMENT B**



Inmate 266448

| Last Name | First Name | Middle Initial |
| --- | --- | --- |
| TEMPLE | WESLEY | W |

| Gender | Height (inches) | Weight | Hair Color |
| --- | --- | --- | --- |
| MALE | 73 | 185 | BROWN |

| Eye Color | Ethnic Origin | Custody Class | Admission |
| --- | --- | --- | --- |
| GREEN | CAUCASIAN | Minimum/Lowest | 11/08/2021 |

Projected Eligible Release Date

| Prison Release Date | Release By () |
| --- | --- |
| 08/11/2022 | SB1291 RELEASE |

Most Recent Location    As of Date

| Complex | Unit | Last Movement | Status |
| --- | --- | --- | --- |
| WINSLOW | ASPC-W CORONADO UNIT | 08/11/2022 | INACTIVE |

Current Mailing Address

**Mailing address is not available.**

Earned Credit Release Date is provided for guidance. Confirmation can be sought by contacting ADCRR.

It is important to note that all Release Dates are *projected* and are *subject to change*; confirm with ADCRR Time Computation Unit or the Offender Information Unit where the inmate is housed for potential changes

If you are a victim of crime, please call or email the Office of Victim Services for assistance with your victim rights or concerns: 602-542-1853  azvictims@azadc.gov

Details of inmate offenses can be accessed by reviewing the case file at the Office of the Clerk of the Court where the case was adjudicated.

## Commitment and Sentence Information *4 records*

| Sentence | Sentence Length | Release County | Court Causes | Offense Date | Sentence Date | Sentence Status | Crime |
| --- | --- | --- | --- | --- | --- | --- | --- |
| A01 | 001 Y/ 06 M/ 00 D | YAVAPAI | 201100350 | 04/02/2011 | 09/12/2011 | IMPOSED | AGGRAVATED DUI |
| B01 | 002 Y/ 06 M/ 00 D | YAVAPAI | 201500559 | 03/09/2015 | 02/08/2016 | IMPOSED | AGGRAVATED DUI |
| B02 | 001 Y/ 00 M/ 00 D | YAVAPAI | 201500559 | 03/09/2015 | 02/08/2016 | IMPOSED | ENDANGERMENT |
| C04 | 002 Y/ 06 M/ 00 D | MARICOPA | CR2020-145527-002 | 12/04/2020 | 10/28/2021 | IMPOSED | MISCNDCT INVOLVING WEAPONS |

## Disciplinary Infractions *0 record*

## Disciplinary Appeals *0 record*  [*Info*]

## Profile Classification *3 records*  [*Info*]

| Classification Date | Classification Type | Custody Risk | Public Risk |
| --- | --- | --- | --- |
| Active Classification | Initial Classification | Minimum | Lowest |
| 11/09/2021 | Initial Classification | Minimum | Lowest |
| 10/04/2011 | Initial Classification | Minimum | Low |

## Parole Action *0 record*

## Parole Placement *9 records*

| Custody Date | Class Type | Approved Date | Next Review | Parole Class |
| --- | --- | --- | --- | --- |
| 01/11/2018 | TRUTH-IN-SENTENCING RELEASE | | | R |
| 03/02/2016 | INITIAL CL. | 03/02/2016 | 03/02/2017 | |
| 02/06/2016 | ADMISSION | | | 2 |
| 02/06/2016 | PAR.CL.CHG. | | | 1/705 Day(s) |
| 09/17/2012 | TRUTH-IN-SENTENCING RELEASE | | | R |
| 09/17/2012 | TR ELIGIBLE | | | 0 |
| 10/04/2011 | INITIAL CL. | 10/05/2011 | 10/03/2012 | |
| 08/21/2011 | ADMISSION | | | 2 |
| 08/21/2011 | PAR.CL.CHG. | | | 1/393 Day(s) |

## Work Program *0 record*

## Notification Requests, Detainers, and/or Warrants *2 records*

| Detainer Date | Detainer Type | Charges | Authority | Agreement Date |
| --- | --- | --- | --- | --- |
| 02/01/2022 | Notification Request | 2020110978 | In State Probation | |
| 11/08/2021 | Notification Request | CR2020-145527-002 | In State Probation | |

**ATTACHMENT C**

08/3/2020

To Whom It May Concern:

This letter serves to confirm that Wesley Temple effective today completed an Intensive Outpatient Program (IOP) at Renaissance Recovery Center from 04/13/2020 to 08/03/2020. Renaissance's IOP program consists of 3 hour groups every Monday, Wednesday, and Thursday night from 6-9pm. Random UA testing is also done 2-3x a week and attending 9 outside 12-step meetings within 3 months and connecting with two peers every weekend while in the program to get out of self and stay connected, is also required.  Wes completed all requirements to successfully graduate our IOP program. Wes has also decided to extend his treatment to continue to connect and grow by being in our Aftercare program which is also three months long and he will be tested once a week, attend an 1.5hr group every Tuesday night and attend 2 outside meetings every week and get a sponsor by his 3rd week in aftercare.

Wes's urine drug screens have been serially negative for ethanol and other elicit and controlled substances during his treatment with Renaissance.  These UA's have been administered by Nils Johanson lab tech with Dominion Laboratory at our Renaissance site in Gilbert. UA documentation can be included upon request.

Best regards,

Chad Metz, LMSW
Therapist
Renaissance Recovery Center
P: (480) 632-1345/(480)526-7738
C: (480) 749-8898

# Dorna S. McBride, LPC
# Counseling Services

August 9, 2020

To Whom It May Concern:

This letter is regarding a current client of mine, Wesley W. Temple.  I began seeing Mr. Temple for anxiety and depression in February 2020.  Since Mr. Temple's release from Valleywise Behavioral Health Center inpatient treatment on 4/10/2020, I have continued to see him for treatment of depression and anxiety.  To date Mr. Temple has been compliant with treatment and has shown a marked improvement with reduction in both anxiety and depressive symptoms.  Our current plan is to continue treatment until symptoms reach an acceptable range and are stable.

In addition to ongoing treatment with me, Mr. Temple has committed to attend AA meetings on a regular basis.  This is a condition of our continued work together.

With Respect,

*Dorna S. McBride, LPC*

Dorna S. McBride, LPC

1237 S. VAL VISTA DRIVE, STE 108 MESA, AZ 85204
T (480) 689-6842



**Date:** 8/6/20     **Print Name:** Wesley Temple

## RENAISSANCE RECOVERY CENTER

| Group Agreement | Recovery Agreement |
|---|---|
| I will be on time for all group sessions.<br><br>I will provide/receive feedback.<br><br>I will share in group, including assignments, as directed.<br><br>I will honor the confidentiality of information and disclosures of all group members. I will not disclose anything shared within the group trust to anyone outside of the group.<br><br>I will honor the anonymity of all group members, both within and without the treatment location(s).<br><br>I will not crosstalk; which includes speaking out of turn, interrupting peers or staff, or giving unsolicited advice.<br><br>I will not subgroup, or engage in side conversations during group.<br><br>I will not keep secrets for other group members which may pose a threat to themselves, another group member, or the group.<br><br>I will use language respectful to race, ethnicity, religion and sexual orientation.<br><br>I will be careful in my use of profanity.<br><br>I will not use language that is sexually explicit or violent in nature.<br><br>I will not use aggressive or threatening language toward peers of staff.<br><br>I will turn off all electronic devices during group. | I will attend **two** 12 step meetings on a non-treatment day per week.<br><br>I will attend and participate in all scheduled Recovery Coach sessions.<br><br>I will call two group members every weekend to check in and continue to build sober support.<br><br>I will get a sponsor within three weeks and continue my step work.<br><br>I will complete all reading assignments from the Big Book and 12x12 as scheduled. |

**Breaches of the Group Agreement and Recovery Agreement may constitute a Treatment Agreement Violation**

_____
Client Signature

8/6/20
Date


RENAISSANCE RECOVERY CENTER

Date: _____          Print Name: _____

## *RENAISSANCE RECOVERY CENTER*
### Treatment Agreement: Continuing Care

The Treatment Agreement is designed to promote and facilitate addiction recovery. The following expectations are intended to keep all group members safe and positively moving forward with their treatment. This agreement is not intended to be punitive. It is our goal to promote the growth of each client through honesty, accountability, responsibility and integrity. This is the foundation of our Recovery Program.

- I will promptly attend all group and individual sessions as scheduled.
- I will actively participate in group sessions per my "Group Agreement".
- I will respect and maintain the confidentiality of the information and disclosures of all group members.
- I will complete my weekly treatment work on time and bring such work to all sessions as assigned.
- I will complete all my assignments and attend two 12 Step meetings per week I will get these assignments signed off on.
- I understand that I must participate in the Continuing Care Program fully in order to qualify for the Lifetime Guarantee
- I will submit to random drug tests. Anything other than a "negative" result may result in immediate discharge from the program. This may include, but not be limited to, "diluted" samples.
- I understand I am allowed two (2) excused absences. These absences are for emergencies only and must be personally approved by authorized Renaissance staff member(s). A no-call/no-show for group is cause for immediate discharge from the Program. Additional absences may result in a contract violation or extended treatment.
- I will abstain from the use and possession of all addictive mood altering substances, **including prescribed addictive drugs** (i.e. valium, xanax, klonopin, adderall, vyvanse, tramadol, suboxone, etc.). Violation of this rule is cause for immediate discharge.
- I will not engage in romantic or sexual relationships with another Renaissance Recovery Center client.
- I will sign a release of information form for my prescribing doctor and inform staff of any medication I am taking while in the program.
- I will not associate with anyone who is using alcohol or other addictive, mood altering substances, or any people I have previously used with.
- I will not be in any setting where drugs are being used or sold, or where alcohol is the primary consumer product (bars, night clubs, concerts, casinos, etc.)

**Any violation of the Treatment Agreement may result in discharge.**
**Cumulative violations will result in discharge from treatment.**
**Staff reserves the right to discharge a client at any time.**

_____          _____
Client Signature                  Date

